IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Consolidated Civil Action No 13-cv-00563-RBJ-KMT

DONALD THORNTON, individually and as Personal Representative of the
ESTATE OF JEAN THORNTON, and on behalf of all others similarly situated,

    Plaintiffs,

v.

DAVITA HEALTHCARE PARTNERS, INC.,

    Defendant.

---

## ORDER

---

### I.    Introduction

Before the Court is defendant DaVita Healthcare Partners' motion to dismiss for failure to state a claim. Jurisdiction is proper under 28 U.S.C. 1332 because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

The plaintiffs in this case, a consolidation of several suits against DaVita, are individuals or family members of individuals who received dialysis treatments from DaVita and allegedly suffered serious injuries as a result of that treatment. Indeed, at this stage it appears largely undisputed that the plaintiffs were severely hurt—and in some instances killed—because of hemodialysis treatments using defective products called GranuFlo or NaturaLyte. The issue before the Court is whether, assuming the truth of the facts alleged in plaintiffs' complaint, DaVita could possibly be held liable for any injury. For the reasons that follow, I grant in part the motion to dismiss.

## II.     Facts

Hemodialysis is a process used to treat patients suffering from advanced kidney disease. During that process, healthcare providers use something called a dialysate to maintain the proper balance of acid and base in the dialysis patient's blood. The products at issue in this case, GranuFlo/NaturaLyte, are a component of dialysate. Dialysates are available by prescription only. [ECF No. 53 ¶¶ 16, 43, 56.] If a patient receives an incorrect ratio of acids and bases during treatment, severe complications can ensue. In extreme cases, cardiac arrest is possible.

GranuFlo/NaturaLyte is manufactured by a company called Fresenius. *Id.* ¶ 7. The product includes an ingredient—sodium diacetate—that causes unsafe changes in patients' blood pH. *Id.* ¶ 48.[1] Plaintiffs allege that Fresenius was aware of these unsafe effects. *Id.* ¶¶ 9, 53, 54. Fresenius was aware of the effects, in part, because of a large internal study of the outcomes of its many administrations of the hemodialysis using GranuFlo/NaturaLyte. *Id.* ¶ 10. In March of 2012, the FDA required Fresenius to issue a memorandum to clinics and physicians explaining these risks. *Id.* ¶¶ 58-59, 68.

DaVita operates an extensive network of clinics throughout the United States. *Id.* ¶ 1. According to plaintiffs, DaVita administered hemodialysis treatments using GranuFlo/NaturaLyte at these clinics, and ultimately plaintiffs and their family members were injured or killed by those treatments. DaVita administers GranuFlo/NaturaLyte only when prescribed by a physician. Its preparation of the treatment involves adding purified water to the GranuFlo/NaturaLyte in order to produce a solution that can be used in DaVita's dialysis machines. *Id.* ¶ 13. DaVita claims to use its proprietary "DaVita Quality Index" to track patient outcomes and safety. *Id.* ¶ 20. This information gathering process indicates, according to

---

[1] Plaintiffs' counsel has previously filed suit against Fresenius in a different jurisdiction. *E.g.*, *Alford v. Fresenius USA, Inc.*, No. 13-cv-20060-JLT (D. Mass. Jan. 10, 2013).

plaintiffs, that DaVita knew or should have known about the risks to which its patients were exposed. *Id.* ¶ 62.[2]

GranuFlo/NaturaLyte's effect on blood pH has the potential to cause a variety of complications. Plaintiffs allege that they received these products during treatment at DaVita and suffered different injuries at different times.

- Sayoko Gibson underwent dialysis treatment at a DaVita clinic in North Carolina on December 26, 2008. During the treatment she suffered a heart attack, and she died on January 3, 2009. *Id.* ¶ 23.

- Tony Armstrong underwent dialysis treatment at a DaVita clinic in California on August 15, 2011. During treatment he suffered a heart attack which caused enduring negative symptoms. *Id.* ¶ 24.

- Gail Goosby underwent dialysis treatment at a DaVita clinic in California on November 17, 2010. Shortly after returning home, Ms. Goosby suffered a heart attack requiring several surgeries and inflicting enduring negative symptoms. *Id.* ¶ 25.

- John Harris underwent dialysis treatment at a DaVita clinic in Michigan on July 1, 2008. Mr. Harris suffered a heart attack during treatment, placing him in the ICU for ten days, and ultimately causing his death. *Id.* ¶ 26.

- Elizabeth McAdams underwent dialysis treatment at a DaVita clinic in Arkansas on November 20, 2012. Shortly after treatment, Ms. McAdams's condition deteriorated. On November 21, 2012 suffered a heart attack and died. *Id.* ¶ 27.

---

[2] The complaint acknowledges that "Fresenius did not share its conclusions with DaVita" but claims that DaVita's status as one of the largest dialysis companies in the United States means it should have been able to independently reach the same conclusion as Fresenius. *Id.* ¶ 62.

- Emanuel Minta underwent dialysis treatment at a DaVita clinic in Georgia on November 11, 2009. Shortly after treatment, Mr. Minta suffered a stroke that caused lasting damage. *Id.* ¶ 28.

- Armando Moreno underwent dialysis treatment at a DaVita clinic in Arizona on September 8, 2011. That night he suffered a heart attack that required multiple surgeries. *Id.* ¶ 29.

- Doris Morris underwent dialysis treatment at a DaVita clinic in Minnesota on April 17, 2012. The next day Ms. Morris suffered a severe heart attack that required surgery and caused lasting damage. *Id.* ¶ 30.

- Stella Nunes underwent dialysis treatment at a DaVita clinic in California on December 26, 2011. During the treatment, Ms. Nunes suffered a heart attack, and she died one day later on December 27, 2011. *Id.* ¶ 31.

- Jose Perez underwent dialysis treatment at a DaVita clinic in Florida on August 12, 2010. Shortly after treatment, Mr. Perez suffered a debilitating stroke. *Id.* ¶ 32.

- Jean Thornton underwent dialysis treatment at a DaVita clinic in Wisconsin on November 3, 2011. Ms. Thornton suffered a fatal heart attack the same day. *Id.* ¶ 33.

- Donald Young underwent dialysis treatment at a DaVita clinic in Pennsylvania on July 18, 2011. During treatment, Mr. Young suffered a massive heart attack requiring surgery, weeks of hospitalization, and causing debilitating symptoms. *Id.* ¶ 34.

### III.  **Procedural History**

Plaintiffs initially filed cases separately. On April 10, 2013, this Court granted a motion to consolidate related actions into the instant case. [ECF No. 14.] The case was referred to Magistrate Judge Kathleen M. Tafoya who directed the parties to file a consolidated complaint.

[ECF No. 35.] The plaintiffs filed a first amended complaint on May 28, 2013, [ECF No. 39.], and a second amended complaint styled as a class action on July 8, 2013, [ECF No. 53.]. The amended complaint brought claims of failure to warn, breach of express and implied warranty, fraudulent concealment, negligence, strict products liability, wrongful death, loss of consortium, and violations of the Colorado Consumer Protection Act against DaVita. DaVita then filed a motion to dismiss pursuant to FRCP 12(b)(6), and plaintiffs responded on September 6, 2013. [ECF Nos. 56 and 63.] DaVita filed a reply on September 22, 2013 at which point the motion became full-briefed and ripe for review by this Court. [ECF No. 65.] During all this back and forth, Judge Tafoya entered an order staying discovery until the Court could rule on DaVita's motion to dismiss. [ECF No. 67.]

## IV. Discussion

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

A. <u>Applicable State Law</u>.

In responding to the motion to dismiss, plaintiffs make a concession that isn't really a concession. Plaintiffs state that they "concede for purposes of this motion that the laws of the respective states of residence should apply." [ECF No. 63 at 8.] In the next paragraph, plaintiffs claim to "reserve the right to argue that Colorado law should apply." *Id.* I get the sense that they took this position believing their claims were likely to survive the motion to dismiss. Because I grant in part the motion to dismiss, I also analyze the claims under applicable Colorado law in order to ensure that plaintiffs get a full and fair treatment of their arguments.

B. <u>Plaintiffs' Strict Liability and Warranty Causes of Action Fail Because DaVita Is a Medical Service Provider, Not a Manufacturer.</u>

Some of plaintiffs' claims are premised on DaVita's being held liable as a manufacturer of GranuFlo/NaturaLyte solution, specifically plaintiffs' causes of action for failure to warn,[3] breach of implied warranties, breach of express warranties, and strict products liability. Acknowledging that Fresenius manufactures GranuFlo/NaturaLyte, plaintiffs nonetheless insist that DaVita is also a manufacturer because it adds water to the powdered compounds sold by Fresenius and thereby "manufactures" the solution that DaVita ultimately uses in its dialysis treatments. This stretches the commonsense and legal definitions of "manufacturer" too far.

---

[3] This cause of action is largely wrapped up in plaintiffs' earlier arguments about DaVita's being a manufacturer of GranuFlo/NaturaLyte. Because DaVita is a manufacturer, it is under a duty to warn or instruct. [ECF No. 63 at 14.] But because this Court holds that DaVita is not a manufacturer, the argument is unavailing. To the extent that plaintiffs are bringing causes of action for failure to warn that are not based on products liability, they are duplicative of their negligence and fraudulent concealment claims and are addressed in the portions of the order dealing with those causes of action.

<u>1.  Strict Liability Causes of Action Are Precluded.</u>

In the relevant jurisdictions, strict liability claims are not allowed against medical service or healthcare providers.  *See, e.g.*, *Kohl v. American Home Prods.*, 78 F. Supp. 2d 885, 895-96 (W.D. Ark. 1999) (pharmacy cannot be held strictly liable for dispensing prescription drugs due to learned intermediary doctrine); *Hoff v. Zimmer, Inc.*, 746 F. Supp. 872, 874 (W.D. Wis. 1990) ("Generally, courts will not apply the doctrine of strict liability to a hospital or medical practitioner for injuries caused by medical instruments, drugs or other substances used in treatment."); *Doe v. Travenol Labs., Inc.*, 698 F. Supp. 780, 782 (D. Minn. 1988) (blood provider protected under state "blood shield" statute, but noting that even without the statute, provision of blood was a service, not a sale of goods); *Strong v. Merck & Co. Inc.*, No. CV 2005-053195, 2009 WL 7233281, at *4 (Ariz. Super. Ct. Nov. 8, 2009); *San Diego Hosp. Ass'n v. Superior Court*, 35 Cal. Rptr. 2d 489, 491 (Cal. Ct. App. 1994) ("those providing services are not subject to strict liability but may be liable only on the basis of negligence or intentional misconduct"); *Porter v. Rosenberg*, 650 So.2d 79, 81-83 (Fla. Dist. Ct. App. 1995) (no strict liability against physician for defective breast implant); *Ayyash v. Henry Ford Health Sys.*, 533 N.W.2d 353, 355-56 (Mich. Ct. App. 1995) (no strict liability against physician and hospital for defective jaw implant); *Cafazzo v. Central Med. Health Servs., Inc.*, 668 A.2d 521, 524-26 (Pa. 1995) (same).

In Georgia, strict liability is only available against those parties "actively involved in the design" of a defective product and one who "sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan" cannot be held liable. *In re Stand n' Seal, Prods. Liab. Litig.*, MDL No. 1804, 2009 WL 3150417, at *2-3 (J.P.M.L. Sept. 28, 2009).  Plaintiffs acknowledge that strict liability claims are not cognizable in the products liability context in North Carolina.  [ECF No. 63 at 9 n.5.]

Finally, plaintiffs fail to point to any case law in Colorado suggesting that DaVita ought to be held strictly liable for defects in GranuFlo/NaturaLyte. *Cf. Quintana v. United Blood Servs.*, 811 P.2d 424 (Colo. App. 1991) (noting that the Colorado "blood shield" statute defines blood related activities as a medical service as a way to avoid claims based in strict liability).

### 2. Implied Warranty Causes of Action Are Precluded.

Service providers like DaVita cannot be held liable for breach of implied warranties in the relevant jurisdictions. *Whitehurst v. Am. Nat'l Red Cross*, 402 P.2d 584, 586 (Ariz. Ct. App. 1965); *Graham Constr. Co. v. Earl*, 208 S.W.3d 106, 111 (Ark. 2005); *Hector v. Cedars-Sinai Med. Ctr.*, 225 Cal. Rptr. 595, 602 & n.3 (Cal. Ct. App. 1986); *Samuelson v. Chutich*, 187 Colo. 155, 158-59 (Colo. 1974); *Jackson v. L.A.W. Contracting Corp.*, 481 So.2d 1290, 1292 (Fl. Dist. Ct. App. 1986); *McCombs v. S. Reg'l Med. Ctr., Inc.*, 504 S.E.2d 747, 749 (Ga. Ct. App. 1998); *Leith v. Henry Ford Hosp.*, No. 211008, 2000 WL 33420641, at *4-5 (Mich. Ct. App. May 16, 2000); *Balkowitsch v. Minneapolis War Memorial Blood Bank, Inc.*, 132 N.W.2d 805, 809-11 (Minn. 1965); *Preston v. Thompson*, 280 S.E.2d 780, 784-85 (N.C. Ct. App. 1981); *Philipp v. U.S. Air, Inc.*, No. 92 Civil 3072, 1993 WL 742805, at *5 (Pa. Comm. Pl. Feb. 23, 1993); *Micro-Managers, Inc. v. Gregory*, 434 N.W.2d 97, 102 (Wis. Ct. App. 1988).

### 3. Express Warranty Causes of Action Are Precluded.

Many of the cases cited above hold that a provider of services may not be held liable for breach of express warranty. In any event, plaintiffs' dropped their claims based on breach of express warranty in their response to DaVita's motion to dismiss. [ECF No. 63 at 18 n.15.]

####    4. Application to DaVita's Use of GranuFlo/NaturaLyte.

Plaintiffs offer scant case law supporting their argument that DaVita's use and administration of GranuFlo/NaturaLyte constitute design or manufacturing sufficient to trigger strict liability. They simply quote the applicable statutory language from several (but not all) of the relevant jurisdictions, and they explain that common sense indicates that DaVita's actions fit into those statutory definitions.[4]

I do not agree. Rather, in my view, common sense suggests DaVita is not a manufacturer of solutions for hemodialysis. Doctors prescribe hemodialysis, and DaVita administers the treatment. The only action that DaVita takes that could possibly be construed as "manufacturing" is the addition of water to achieve the correct concentration of hemodialysis solution. Plaintiffs are free to allege that DaVita acted negligently in its creation of the solution or monitoring of patient blood pH, but they cannot pretend that by adding water to a product manufactured by someone else (a step that is necessary to use the product for its intended purpose) DaVita thereby became a manufacturer of the product or that DaVita should be held strictly liable for defects in that product.

---

[4] The relevant jurisdictions define a manufacturer the following ways for strict liability purposes: "a person or entity that designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product before its sale to a user or consumer" Ariz. Rev. Stat. § 12-681; "the designer, fabricator, producer, compounder, processor, or assembler of any product or its component parts" Ark. Code § 16-116-102; "manufacturers are those entities that have an active role in the production, design, or assembly of products" *Buchan v. Lawrence Metal Prods.*, 607 S.E.2d 153, 156 (Ga. Ct. App. 2004) (citing Ga. Code § 51-1-11); "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling" M.C.L.A. § 600.2945; "designs, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller who has actual knowledge of a defect in a product" Colo. Rev. Stat. § 13-21-401(1).

Plaintiffs' argument is essentially in the form of ipse dixit -- DaVita is a manufacturer or seller of GranuFlo/NaturaLyte because plaintiffs say so. But they cite no case law in support of this notion that a medical service provider that rehydrates powdered medication is a manufacturer. Plaintiffs never explain how adding water to GranuFlo/NaturaLyte pursuant to Fresenius's directions created a new product or chemically altered the product in a way that caused plaintiffs' injuries. Nor do they offer any facts or theories suggesting that DaVita rehydrated the GranuFlo/NaturaLyte contrary to Fresenius's instructions.

Because DaVita is not a manufacturer of the GranuFlo/NaturaLyte compounds, DaVita cannot be liable under plaintiffs' theories of strict liability, breach of implied or express warranty, or products liability. This is true as a matter of law, even after this Court accepts every well-pled fact in plaintiff's amended complaint.[5]

### C. Plaintiffs' Remaining Causes of Action.

Moving past the idea of DaVita as a manufacturer of GranuFlo/NaturaLyte, the facts alleged in the complaint support two plausible, alternative theories. Plaintiffs claim DaVita was collecting quality control data about patient outcomes. [ECF No. 53 ¶¶ 62.] Therefore either it failed to connect the dots surrounding changing blood pH levels in its patients and therefore acted negligently in administering care or the company connected the dots but kept the information secret, thereby perpetrating a fraud. This latter theory could theoretically support plaintiffs' causes of action for fraudulent concealment or a violation of the Colorado Consumer Protection Act. I address each of these causes of action below.

---

[5] Statements in the complaint to the effect that DaVita "manufactures" these products are not facts entitled to a presumption of truth but rather mere conclusory allegations. *See Iqbal*, 556 U.S. at 681.

1. Negligence

Plaintiffs bring claims of negligence (and derivative claims of wrongful death and loss of consortium) based on DaVita's breach of duty to administer care safely by failing to notice the harmful effects of its use of GranuFlo/NaturaLyte and to take corrective action to protect the health of its patients.  [ECF No. 53 ¶¶ 71, 72, 73, 119, 120.]  These claims are not based on DaVita's role as a manufacturer or seller of GranuFlo/NaturaLyte but on its role as a provider of dialysis services operating in many states and employing procedures to monitor health outcomes. [ECF No. 53 ¶ 119 ("DaVita had a duty to adequately warn, train, instruct and/or monitor treating physicians and dialysis treatment facilities to ensure that the NaturaLyte and/or GranuFlo products were being properly used and/or administered."); ECF No. 63 at 19 (explaining that "even if DaVita were correct that it is only a provider of medical services, it cannot possibly argue that it was under no duty to render such services with reasonable care").]

DaVita argues that all of these claims were filed after the expiration of applicable statutes of limitation and are thus time-barred.  As a general matter, the Court agrees with DaVita's position that the statutes of limitation regarding professional services apply to these actions.[6] Nonetheless, the discovery rule protects almost all of the plaintiffs in this case because "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing. . . ." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (Cal. 1988); *see also In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1379 (M.D. Ga. 2010); *Gonzales v. Tracy*, 994 So. 2d 402, 405 n.3 (Fla. Dist. Ct. App. 2008);

---

[6] This conclusion logically flows from the Court's earlier discussion and dismissal of the products liability claims.

*Moll v. Abbott Labs.*, 506 N.W.2d 816, 824 (Mich. 1993); *Black v. Littlejohn*, 325 S.E.2d 469, 483 (N.C. 1985).[7]

DaVita makes persuasive arguments about why at least two plaintiffs are not entitled to the benefit of the discovery rule in this case. First, DaVita points out that in North Carolina, the discovery rule is inapplicable to wrongful death actions even where based on underlying allegations of medical malpractice. *Wilkerson v. Christian*, 2008 WL 483445, at *5 (Feb. 19, 2008) ("the broad discovery-rule . . . does not apply in a suit seeking damages for a wrongful death"). Plaintiff Allen's mother died on January 3, 2009 but her suit was not filed until July 8, 2013, well outside of the applicable three-year statute of limitations on personal injury resulting from medical malpractice or from the two-year statute of limitations on wrongful death actions. Therefore the wrongful death claims of the North Carolina plaintiffs in this case are dismissed as time-barred.

Second, DaVita notes that under California law, "a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 27 Cal. Rptr. 3d 661, 668 (Cal. 2005). Because the California plaintiffs (Armstrong, Goosby, and Nunes) merely claim that they were unaware of the cause of the injury but provide no additional facts as required by California law, their negligence claims, as pled in the present form of the complaint, (and derivative causes of action) are time-barred.

---

[7] DaVita's argument that the discovery rule is inapplicable to medical malpractice actions in Florida, Georgia, and Michigan is unavailing. *See, e.g.*, *Gonzales v. Tracy*, 994 So.2d 402, 405 (noting the existence of a discovery rule in medical malpractice cases in Florida); *Miller v. Kitchens*, 553 S.E.2d 300, 303 (Ga. Ct. App. 2001) (holding that while the discovery rule does not apply to all medical malpractice claims, it does apply in cases of fraud); *Bearup v. General Motors Corp.*, 2009 WL 249456 (Mich. Ct. App. 2009) (citing MCL 600.5838a(2) which specifically created a discovery rule for medical malpractice cases).

Finally, DaVita notes that both Arizona and Pennsylvania law require special, additional documentation to be filed in connection with medical malpractice actions. [ECF No. 56 at 24-26.] DaVita further notes that the plaintiffs in Arizona and Pennsylvania in this case failed to file any of the required documentation. *Id.* Plaintiffs respond that the requirements are inapplicable to claims sounding in strict products liability. [ECF No. 63 at 25-26.] Because this Court has clarified that the plaintiffs' claims in products liability are misplaced, plaintiffs are given leave to file the pertinent paperwork required by Arizona and Pennsylvania law.

### 2. Fraudulent Concealment

DaVita argues that the plaintiffs have failed to meet the heightened pleading requirements of Rule 9(b) when pleading allegations of fraud. However, in cases of fraudulent omission, while Rule 9(b)'s particularity requirement applies, "that standard is modified somewhat." *Dawson v. Litton Loan Servicing, LP*, No. 12-CV-01334-CMA-KMT, 2013 WL 1283848 (D. Colo. Mar. 28, 2013) (citing *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012). That modified standard requires that a plaintiff must identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." *Id.*

Here, putting aside any claims based on a duty to warn plaintiffs' physicians, the plaintiffs have adequately identified and explained how DaVita's monitoring systems would have detected the widespread changes in patients' blood pH levels and how that information would have been available before Fresenius's internal memorandum about the risks or the FDA recall. Thus, the complaint identifies the information, [ECF No. 53 ¶ 110 (risk of cardiovascular damage due to improper blood pH)], the reason it should have been disclosed, [ECF No. 53

¶ 114 (because plaintiffs would not have undergone treatment if they had been aware of the danger)], the person who should have disclosed it, [ECF No. 53 ¶ 109 (claiming that DaVita had a duty to disclose this information)], and the timing or circumstances when disclosure should have occurred, [ECF No. 53 ¶ 62 (when monitoring of blood pH would have revealed widespread changes)]. Therefore, I find that the plaintiffs have adequately pled their claims of fraudulent concealment.

### 3. Colorado Consumer Protection Act

DaVita urges the Court to dismiss plaintiffs' claims under the Colorado Consumer Protection Act (CCPA). In support of this position, DaVita argues that (1) monetary damages are not available in class actions brought under the CCPA; (2) that DaVita had no duty to warn; and (3) that plaintiffs failed to plead reliance on any purported omissions by DaVita.

Plaintiffs respond that because no class has yet been certified, DaVita's first argument is premature. I agree. Plaintiffs also point out that they did indeed plead reliance on DaVita's omissions. [ECF No. 53 ¶ 147 ("Neither Plaintiffs nor any similarly situated dialysis patient would have chosen to use NaturaLyte and GranuFlo if adequately informed of the true facts concerning the dangers of NaturaLyte and GranuFlo.").] I find this to be sufficient pleading of reliance.

I do, however, agree with DaVita that insofar as any of plaintiffs' claims under the CCPA are based on an alleged breach of a duty to warn, those claims are dismissed, because DaVita is not a manufacturer of GranuFlo/NaturaLyte.

### V. Conclusion

This case contains many tragic stories. The people who were hurt or killed by the use of GranuFlo/NaturaLyte were hurt and killed while believing they were in safe and expert hands. If

plaintiffs' allegations are true, then the conduct giving rise to those allegations was inexcusable. As a matter of law, however, DaVita cannot be liable for defects in the design of GranuFlo/NaturaLyte nor for any alleged deficiencies in the warnings accompanying these products. Nevertheless some of the claims, for example those based on DaVita's acts or failure to act in connection with administering dialysis services, are sufficiently pled to survive a motion to dismiss under Rule 12(b)(6). Defendant's motion to dismiss [ECF No. 56] is GRANTED IN PART.

The Court dismisses, with prejudice unless otherwise indicated, the following causes of action:

1. Failure to warn (first cause of action).
2. Breach of implied warranty (second cause of action).
3. Breach of express warranty (third cause of action).
4. Negligence (fifth cause of action) of California and North Carolina plaintiffs (without prejudice).
5. Strict products liability (sixth cause of action).
6. Wrongful death (seventh cause of action) for North Carolina plaintiffs.
7. Alleged violations of the CCPA based on a failure to warn (ninth cause of action).

The remaining causes of action are all limited to theories based on DaVita's actions as a provider of medical services, not as a manufacturer or seller of GranuFlo/NaturaLyte: fraudulent concealment (fourth cause of action), negligence (fifth cause of action), wrongful death (seventh cause of action), loss of consortium (eighth cause of action) and non-failure to warn claims under the CCPA.

DATED this 9th day of April, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

16